ADARAND CONSTRUCTORS, INC. *v.* SLATER, SEC-
RETARY OF TRANSPORTATION, ET AL.

No. 99–295.   Decided January 12, 2000

Per Curiam.

I

Congress has adopted a policy that favors contracting with small businesses owned and controlled by the socially and economically disadvantaged. See § 8(d)(1) of the Small Business Act, as added by § 7 of Pub. L. 87–305, 75 Stat. 667, and as amended, 15 U. S. C. § 637(d)(1) (1994 ed., Supp. IV). To effectuate that policy, the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA), Pub. L. 102–240, § 1003(b), 105 Stat. 1919, which is an appropriations measure for the Department of Transportation (DOT), seeks to direct 10 percent of the contracting funds expended on projects funded in whole or in part by the appropriated funds to transportation projects employing so-called disadvantaged business enterprises.[1]  ISTEA § 1003(b)(1).

---

[1] Congress recently enacted the Transportation Equity Act for the 21st Century, Pub. L. 105–178, Tit. I, § 1101(b), 112 Stat. 113, the successor appropriations measure to ISTEA. Although the new Act contains simi-

To qualify for that status, the small business must be certified as owned and controlled by socially and economically disadvantaged individuals. DOT does not itself conduct certifications, but relies on certifications from two main sources: the Small Business Administration, which certifies businesses for all types of federal procurement programs, and state highway agencies, which certify them for purposes of federally assisted highway projects. The federal regulations governing these certification programs, see 13 CFR pt. 124 (1999) (Small Business Administration); 64 Fed. Reg. 5096–5148 (1999) (to be codified in 49 CFR pt. 26) (DOT for state highway agencies), require that the certifying entity *presume* to be socially disadvantaged persons who are black, Hispanic, Asian Pacific, Subcontinent Asian, Native Americans, or members of other groups designated from time to time by the Small Business Administration. See 13 CFR § 124.103(b); 64 Fed. Reg. 5136 (§ 26.67). State highway agencies must in addition presume that women are socially disadvantaged. *Ibid.* Small businesses owned and controlled by persons who are not members of the preferred groups may also be certified, but only if they can *demonstrate* social disadvantage. See 13 CFR § 124.103(c); 64 Fed. Reg. 5136–5137 (§ 26.67(d)); *id.,* at 5147–5148 (pt. 26, subpt. D, App. E). Third parties, as well as DOT, may challenge findings of social disadvantage. See 13 CFR § 124.1017(a); 64 Fed. Reg. 5142 (§ 26.87).

II

In 1989, DOT awarded the prime contract for a federal highway project in Colorado to Mountain Gravel & Construction Company. The contract included a Subcontractor Compensation Clause—which the Small Business Act requires all

---

lar provisions, it is technically the provisions of ISTEA that apply to funding obligated in prior fiscal years but not yet expended.

federal agencies to include in their prime contracts, see 15 U. S. C. § 637(d)—rewarding the prime contractor for subcontracting with disadvantaged business enterprises, see § 637(d)(4)(E). Petitioner, whose principal is a white man, submitted the low bid on a portion of the project, but Mountain Gravel awarded the subcontract to a company that had previously been certified by the Colorado Department of Transportation (CDOT) as a disadvantaged business enterprise.

Petitioner brought suit against various federal officials, alleging that the Subcontractor Compensation Clause, and in particular the race-based presumption that forms its foundation, violated petitioner's Fifth Amendment right to equal protection. The Tenth Circuit, applying the so-called intermediate scrutiny approved in some of our cases involving classifications on a basis other than race, see *Mississippi Univ. for Women* v. *Hogan*, 458 U. S. 718 (1982); *Craig* v. *Boren*, 429 U. S. 190 (1976), upheld the use of the clause and the presumption. *Adarand Constructors, Inc.* v. *Peña*, 16 F. 3d 1537 (1994). Because DOT's use of race-based measures should have been subjected to strict scrutiny, we reversed and remanded for the application of that standard. *Adarand Constructors, Inc.* v. *Peña*, 515 U. S. 200, 237–239 (1995) *(Adarand I)*.

On remand, the District Court for the District of Colorado held that the clause and the presumption failed strict scrutiny because they were not narrowly tailored. *Adarand Constructors, Inc.* v. *Peña*, 965 F. Supp. 1556 (1997) *(Adarand II)*. Specifically, the court held the presumption that members of the enumerated racial groups are socially disadvantaged to be both overinclusive and underinclusive, because it includes members of those groups who are not disadvantaged and excludes members of other groups who are. *Id.*, at 1580. The District Court enjoined DOT from

using the clause and its presumption.[2]  *Id.*, at 1584.  Respondents appealed to the Tenth Circuit.

Shortly thereafter, and while respondents' appeal was still pending, petitioner filed a second suit in the District Court, this time naming as defendants certain Colorado officials, and challenging (on the same grounds) the State's use of the federal guidelines in certifying disadvantaged business enterprises for federally assisted projects.  *Adarand Constructors, Inc.* v. *Romer*, Civ. No. 97–K–1351 (June 26, 1997). Shortly after this suit was filed, however, Colorado altered its certification program in response to the District Court's decision in *Adarand II.*  Specifically, the State did away with the presumption of social disadvantage for certain minorities and women, App. to Pet. for Cert. 109–111, and in its place substituted a requirement that all applicants certify on their own account that each of the firm's majority owners "has experienced social disadvantage based upon the effects of racial, ethnic or gender discrimination," *id.*, at 110.  Colorado requires no further showing of social disadvantage by any applicant.

A few days after Colorado amended its certification procedure, the District Court held a hearing on petitioner's motion for a preliminary injunction in *Romer.*  The District Court took judicial notice of its holding in *Adarand II* that the Federal Government had discriminated against petitioner's owner "by the application of unconstitutional rules and regulations."  App. to Pet. for Cert. 136.  As a result of that race-based discrimination, the District Court reasoned, petitioner likely was eligible for disadvantaged business status under Colorado's system for certifying businesses for federally assisted projects—the system at issue in *Romer.*  App. to Pet. for Cert. 137.  The District Court therefore denied

---

[2] Before the Tenth Circuit, the parties disagreed as to whether the scope of the District Court's remedial order was appropriate.  In characterizing that order as we do here, we do not intend to take a position in that dispute.

petitioner's request for a preliminary injunction. *Id.*, at 138. Petitioner then requested and received disadvantaged business status from CDOT.

Meanwhile, respondents' appeal from the District Court's decision in *Adarand II* was pending before the Tenth Circuit. Upon learning that CDOT had given petitioner disadvantaged business status, the Tenth Circuit held that the cause of action was moot, and vacated the District Court's judgment favorable to petitioner in *Adarand II.* 169 F. 3d 1292, 1296–1297, 1299 (CA10 1999). Petitioner filed a petition for certiorari.

## III

In dismissing the case as moot, the Tenth Circuit relied on the language of the Subcontractor Compensation Clause, which provides that "[a] small business concern will be considered a [disadvantaged business enterprise] after it has been certified as such by . . . any State's Department of Highways/Transportation." *Id.*, at 1296. Because CDOT had certified petitioner as a disadvantaged business enterprise, the court reasoned, the language of the clause indicated that the Federal Government also had accepted petitioner's certification for purposes of federal projects. As a result, petitioner could no longer demonstrate "'an invasion of a legally protected interest' that is sufficiently 'concrete and particularized' and 'actual or imminent'" to establish standing. *Arizonans for Official English* v. *Arizona,* 520 U. S. 43, 64 (1997) (quoting *Lujan* v. *Defenders of Wildlife,* 504 U. S. 555, 560 (1992)). Because, the court continued, petitioner could not demonstrate such an invasion, its cause of action was *moot.* 169 F. 3d, at 1296–1297.

In so holding, the Tenth Circuit "confused mootness with standing," *Friends of Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc., ante,* at 189, and as a result placed the burden of proof on the wrong party. If this case is moot, it is because the Federal Government has accepted CDOT's

certification of petitioner as a disadvantaged business enterprise, and has thereby ceased its offending conduct. Voluntary cessation of challenged conduct moots a case, however, only if it is *"absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States* v. *Concentrated Phosphate Export Assn., Inc.,* 393 U. S. 199, 203 (1968) (emphasis added). And the " 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again *lies with the party asserting mootness." Friends of Earth, ante,* at 189 (emphasis added) (quoting *Concentrated Phosphate Export Assn., supra,* at 203).

Because respondents cannot satisfy this burden, the Tenth Circuit's error was a crucial one. As common sense would suggest, and as the Tenth Circuit itself recognized, DOT accepts only "valid certification[s]" from state agencies. 169 F. 3d, at 1298. As respondents concede, however, see Brief in Opposition 13–14, n. 6, DOT has yet to approve—as it must—CDOT's procedure for certifying disadvantaged business enterprises, see 64 Fed. Reg. 5129 (1999) (49 CFR § 26.21(b)(1)) ("[The State] must submit a [disadvantaged business enterprise] program conforming to this part by August 31, 1999 to the concerned operating administration").

DOT has promulgated regulations outlining the procedure state highway agencies must follow in certifying firms as disadvantaged business enterprises. See 64 Fed. Reg. 5096–5148 (pt. 26). As described earlier, those regulations require the agency to presume that "women, Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, or other minorities found to be disadvantaged by the [Small Business Administration]" are socially disadvantaged. *Id.,* at 5136 (§ 26.67(a)(1)). Before individuals not members of those groups may be certified, the state agency must make individual determinations as to disadvantage. See *id.,* at 5136–5137 (§ 26.67(d)) ("In such a proceeding, the applicant firm

has the burden of demonstrating to [the state highway agency], by a preponderance of the evidence, that the individuals who own and control it are socially and economically disadvantaged"); *id.*, at 5147–5148 (pt. 26, subpt. D, App. E) (providing list of "elements" that highway agencies must consider in making individualized determinations of social disadvantage). CDOT's new procedure under which petitioner was certified applies no presumption in favor of minority groups, and accepts without investigation a firm's self-certification of entitlement to disadvantaged business status. See App. to Pet. for Cert. 109–111. Given the material differences (not to say incompatibility) between that procedure and the requirements of the DOT regulations, it is not at all clear that CDOT's certification is a "valid certification," and hence not at all clear that the Subcontractor Compensation Clause requires its acceptance.

Before the Tenth Circuit, respondents took pains to "expres[s] no opinion regarding the correctness of Colorado's determination that [petitioner] is entitled to [disadvantaged business] status." Motion by the Federal Appellants to Dismiss Appeal as Moot and to Vacate the District Court Judgment in No. 97–1304, p. 3, n. 2. Instead, they stated flatly that "in the event there is a third-party challenge to [petitioner's] certification as a [disadvantaged business enterprise] and the decision on the challenge is appealed to DOT, DOT may review the decision to determine whether the certification was proper." *Id.*, at 3–4, n. 2. In addition, DOT itself has the power to require States to initiate proceedings to withdraw a firm's disadvantaged status if there is "reasonable cause to believe" that the firm "does not meet the eligibility criteria" set forth in the federal regulations. 64 Fed. Reg. 5142 (§ 26.87(c)(1)). Given the patent incompatibility of the certification with the federal regulations, it is far from clear that these possibilities will not become reality. Indeed, challenges to petitioner's disadvantaged business status seem quite probable now that the Tenth Circuit, by

vacating *Adarand II*, has eliminated the sole basis for petitioner's certification in the first place.

The Tenth Circuit dismissed these possibilities as insufficiently particular and concrete to grant standing and therefore "too conjectural and speculative to avoid a finding of mootness." 169 F. 3d, at 1298 (internal quotation marks omitted). As we recently noted in *Friends of the Earth*, however, "[t]he plain lesson of [our precedents] is that there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Ante*, at 190. Because, under the circumstances of this case, it is impossible to conclude that respondents have borne their burden of establishing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *ante*, at 189, petitioner's cause of action remains alive.

\*   \*   \*

It is no small matter to deprive a litigant of the rewards of its efforts, particularly in a case that has been litigated up to this Court and back down again. Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought. Because that is not the case here, the petition for writ of certiorari is granted, the judgment of the United States Court of Appeals for the Tenth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*