### In re COAL RIVER RESOURCES, INC., et al., Debtors.

### Tri–State Leasing Corporation, et al., Appellants and Cross–Appellees,

v.

### United States Trustee, Appellee and Cross–Appellant.

### Nos. 2:04CV00075, 2:04CV00078, 2:04CV00076, 2:04CV00077.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Feb. 15, 2005.

Robert T. Copeland, Copeland & Bieger, P.C., Abingdon, Virginia, for Appellants and Cross–Appellees.

Margaret K. Garber, Office of the United States Trustee, Roanoke, Virginia, for the Appellee and Cross–Appellant.

## OPINION

JONES, Chief Judge.

In these related bankruptcy appeals, I find that the bankruptcy court did not err in disqualifying a law firm from representing two of the four debtors in a jointly administered Chapter 11 proceeding.

### I

The four debtors are all Virginia corporations: Coal River Resources, Inc. ("Coal

River"), Hollow Mountain Resources, Inc. ("Hollow Mountain"), Tri–State Leasing Corp. ("Tri–State"), and Steven R. Mullins Excavating, Inc. ("Mullins Excavating"). The stock in each corporation is owned by one individual, Steven R. Mullins, who is also the chief executive officer of each entity. The debtors are engaged in the coal mining business. Coal River is the lessee of the coal in place; Hollow Mountain is the mine operator; and Tri–State and Mullins Excavating own and lease coal mining equipment to Hollow Mountain. Tri–State and Mullins Excavating also operate coal mines as contractors for unrelated companies.

Each corporation filed a petition in the bankruptcy court under Chapter 11 of the Bankruptcy Code on March 8, 2004. Along with the petition, each filed an application for the appointment of Copeland & Bieger, P.C. as legal counsel for the debtor. The United States Trustee [1] objected to this appointment on the ground, among others, that "some or all of the debtors are creditors of one another." (Objection to Am. Applications to Employ Counsel ¶ 2.)

A hearing by the bankruptcy court on the United States Trustee's objection was held on April 20, 2004. On July 2, 2004, following briefing by the parties, the bankruptcy court (Stone, J.) issued its opinion

permitting the employment of Copeland & Bieger for Coal River and Mullins Excavating but refusing its appointment for Hollow Mountain and Tri–State. The bankruptcy court held that Copeland & Bieger was not qualified to represent Hollow Mountain and Tri–State under section 327 of the Bankruptcy Code, 11 U.S.C.A. § 327 (West 2004), because of an actual conflict of interest. The court noted, however, that Copeland & Bieger was not precluded from preparing pleadings on behalf of all of the debtors, on the condition that the pleadings be reviewed, approved, and signed by separate counsel for Hollow Mountain and Tri–State. The court also noted that the reasonable expense of such joint legal services could be shared by all of the debtors.

Hollow Mountain and Tri–State both appealed the bankruptcy court's decision to this court.[2] In turn, the United States Trustee noted cross appeals from the bankruptcy court's ruling that the law firm was not precluded from compensation for preparing joint pleadings for the debtors under certain circumstances. Jurisdiction of this court exists pursuant to 28 U.S.C.A. § 158(a)(1) (West Supp.2004). The issues in the appeals have been briefed and argued and are ripe for decision.

## II

At the outset, I must consider whether the cases are moot. Following the bank-

---

1. United States trustees are officials of the Department of Justice who supervise bankruptcy trustees and monitor certain aspects of the administration of bankruptcy cases. See 28 U.S.C.A. § 586 (West 1993 & Supp.2004). A United States trustee may raise, appear, and be heard on any issue. See 11 U.S.C.A. § 307 (West 2004).

2. The United States Trustee has not raised the question of the authority of Copeland & Bieger to prosecute this appeal in the names of Hollow Mountain and Tri–State, in view of the refusal by the bankruptcy court to appoint the law firm as counsel. It appears that the

real party in interest is the law firm, which could have prosecuted the appeals in its own name. See Weeks v. Indep. Sch. Dist. No. I–89, Bd. of Educ., 230 F.3d 1201, 1207–08 (10th Cir.2000) (holding that attorney had standing to appeal order disqualifying him from further representation of party in case); 3 Collier on Bankruptcy ¶ 5.06 (15th ed.) ("The type of entity who has appellate standing is one whose 'rights or interests are "directly and adversely affected pecuniarily" by the order or decree of the bankruptcy court.' ") (citations omitted).

ruptcy court's decision, separate counsel was appointed for Hollow Mountain and Tri–State and the administration of the cases has proceeded. Copeland & Bieger now advises the court that even if successful in these appeals, it will not hereafter represent Hollow Mountain or Tri–State, or seek compensation for any legal services performed for those debtors after July 2, 2004, the date of the bankruptcy court's decision. It may, however, seek compensation for legal services performed before that date.[3]

A case becomes moot and beyond the power of the court to adjudicate it when, at any stage, changed circumstances remove the actual controversy. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). The court must consider mootness even if no party contends that the case is moot. *See id.* at 68 n. 23, 117 S.Ct. 1055.

Because the bankruptcy court's decision may impact the ability of that court to consider any claim for compensation for services for Hollow Mountain and Tri–State before July 2, 2004, I find that the appeals are not moot. However, because the law firm has agreed not to seek compensation for any services performed after that date, I find that the United States Trustee's cross appeals are moot. *See Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 224, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000) (holding that claim is mooted on appeal where it is absolutely clear that litigant no longer needs judicial protection).

**III**

Under section 327 of the Bankruptcy Code, the bankruptcy court has broad discretion over the appointment of professionals to work on behalf of the bankruptcy estate. *See Harold & Williams Dev. Co. v. United States Trustee (In re Harold & Williams Dev. Co.),* 977 F.2d 906, 909 (4th Cir.1992) (reviewing the debtor's request to have the same person serve both as lawyer and accountant). However, there are limits on that discretion. Congress has established per se rules that limit the bankruptcy court's power. *Id.* (citing *Childress v. Middleton Arms Ltd. P'ship (In re Middleton Arms Ltd. P'ship),* 934 F.2d 723, 725–26 (6th Cir.1991)). Section 327(a) allows for the approval only of "disinterested person[s]" and prohibits approval of professionals who hold or represent "an interest adverse to the estate." 11 U.S.C.A. § 327. Section 327(c) allows for the approval of professionals who also represent a creditor of the estate only if there is no "actual conflict of interest." 11 U.S.C.A. § 327(c). Congress' rules are narrowly tailored, and the courts must take care not to expand them. *See Harold & Williams,* 977 F.2d at 910.

Even if the employment of a particular professional is allowed under section 327, the bankruptcy court still must decide whether to approve that professional considering "the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *Id.* The Fourth Circuit encourages "fact-intensive inquiry," and cautions against establishing new per se rules

**3.** Under certain limited circumstances, retroactive approval of an application to appoint counsel for a debtor and pay compensation to such counsel from the debtor's estate is permitted. *See Lamie v. United States Trustee (In re Legend Radio Group, Inc.),* No. 1:01CV00025, 2001 WL 855875, at *1 (W.D.Va. Apr.30, 2001) (discussing circumstances).

in conflict of interest cases. *See In re Palumbo Family Ltd. P'ship,* 182 B.R. 447 (Bankr.E.D.Va.1995) (citing *Harold & Williams,* 977 F.2d at 909–910). The courts should "take into account the facts of a particular case and the overall objectives of the bankruptcy system." *Harold & Williams,* 977 F.2d at 910 (citing *In re Martin,* 817 F.2d 175, 182 (1st Cir.1987)). The "potential" for conflict alone does not necessarily require disqualification. *Id.* (citing *In re Leslie Fay Co.,* 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994)).

This court reviews the bankruptcy court's findings of fact under a clearly erroneous standard, and its conclusions of law de novo. *See* Fed. R. Bankr.P. 8013. A factual finding is clearly erroneous if there is no evidence to support it or "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The appellants argue that the bankruptcy court disqualified the law firm solely because there is debt between the debtors and thus erred by applying an unauthorized per se rule. While the appellants quote language from the bankruptcy court's opinion that may support that view,[4] taken as a whole, the opinion shows that the bankruptcy court based its decision on a finding of actual conflict.

While the four debtors operated under the single control of Mr. Mullins, the schedules filed by the debtors showed varying obligations, as follows: Coal River owed $202,012.92 to seven creditors; Hollow Mountain owed $6,633,375.43 to ninety-one creditors; Tri–State owed $6,646,089.02 to sixty-one creditors; and Mullins Excavating owed $11,632,878.19 to one hundred fifteen creditors.[5]

Larry D. Sturgill, the accountant employed by all of the debtor companies, testified before the bankruptcy court that there was intercompany indebtedness consisting of charges for services and equipment, as well as cash loans. He testified that periodically he would make intercompany accounting adjustments of this indebtedness for income tax purposes. If one of the companies showed a profit, its income would be reduced through the intercompany adjustments in order to minimize its tax liability. (Tr. 21–22.)

The schedules filed by the four entitles also showed inconsistent reporting of the intercompany debt. For example, Hollow Mountain scheduled a debt to Coal River in the amount of $82,823.87, but Coal River did not schedule this amount as a receivable. Mullins Excavating claimed it was owed $1,399,875.88 from Hollow Mountain, but Hollow Mountain did not list such a debt. Tri–State scheduled a debt to Mullins Excavating in the amount of

---

**4.** The appellants cite the following language from the bankruptcy court's opinion: "[T]he Court believes that it is bound to conclude that to represent in the general conduct of its bankruptcy case, a debtor-in-possession which is a material debtor of another debtor-in-possession is inherently to 'represent an interest adverse' to the latter's estate." (Op. at 8.) While there is no Fourth Circuit authority on point, it has been held that the mere fact of intercompany claims among debtor entities "does not in and of itself constitute an impermissible conflict of interest that would

justify disqualification." *In re Global Marine,* 108 B.R. 998, 1004 (Bankr.S.D.Tex.1987); *see* 3 Collier on Bankruptcy ¶ 327.04[5][b] (15th ed.) (approving holding). The United States Trustee conceded at oral argument that intercompany debt is not necessarily disqualifying.

**5.** These figures exclude the intercompany debt. The schedules filed by the debtors are not part of the record on appeal, but no one disputes the figures recited in the opinion below.

$1,323,081.41, but Mullins Excavating did not recognize that receivable.

 The discrepancies between the scheduled debt, as well as the testimony of the accountant that tax considerations governed the recognition of the intercompany debt, support the bankruptcy court's finding that a single attorney could not represent the interests of each debtor, and in particular the fiduciary obligation of each debtor to its own creditors. Accordingly, I find that the bankruptcy court did not err, and I will affirm its orders.

Separate judgments consistent with this opinion will be entered herewith.