# United States Court of Appeals for the Federal Circuit

2008-7076

MILITARY ORDER OF THE PURPLE HEART OF THE
USA, and NATIONAL VETERANS LEGAL SERVICES
PROGRAM,

Petitioners,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

William E. Doyle, Jr., Morgan, Lewis & Bockius LLP, of Washington, DC, argued for petitioners. With him on the brief was Barton F. Stichman, National Veterans Legal Services Program, of Washington, DC.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk Manhardt, Assistant Director. Of counsel on the brief was David R. McLenachen, Deputy Assistant General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: Department of Veterans Affairs

# United States Court of Appeals for the Federal Circuit

2008-7076

MILITARY ORDER OF THE PURPLE HEART OF THE
USA, and NATIONAL VETERANS LEGAL SERVICES
PROGRAM,

Petitioners,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

On petition for review pursuant to 38 U.S.C. Section 502.

_____

DECIDED: September 10, 2009

_____

Before NEWMAN, MAYER, and SCHALL <u>Circuit Judges.</u>

Opinion for the court filed by <u>Circuit Judge</u> NEWMAN.  Concurring in part and dissenting in part opinion filed by <u>Circuit Judge</u> SCHALL.

NEWMAN, <u>Circuit Judge</u>.

The petitioners are veterans organizations, the Military Order of the Purple Heart of

the USA and the National Veterans Legal Services Program.  They request direct review, in

accordance with the provisions of 38 U.S.C. §502,[1] of a new procedure promulgated by the Secretary of Veterans Affairs with respect to the determination of certain claims.

The petitioners state that the new procedure, which applies only to large awards, is in violation of law and regulation, for the decision of the claim is made without notice to the veteran that an award made by the regional office has been reduced, and without a hearing before the decision-maker. The veteran is excluded from participation in the proceeding that reduced the award, and is denied knowledge and a record concerning the reduction. The petitioners point out that this new procedure was adopted without public Notice and Comment, as required by the Administrative Procedure Act ("APA"). The Secretary responds that this procedure is merely a matter of "internal housekeeping," and that there are sound policy reasons for its adoption. The policy aspects are not before us; the only issue on this petition is the legality of the new practice and its method of adoption.

We conclude that the procedure, whereby certain regional office decisions are re-determined by the Compensation and Pension Service ("C&P") without the knowledge and participation of the claimant, does not comply with the extant Regulations, and that its promulgation required the Notice and Comment provisions of the APA. We thus grant the petition and set aside the procedure of Fast Letters 07-19 and 08-24.

## DISCUSSION

On August 27, 2007, the VA issued a directive to "All VA Regional Offices" by Fast Letter 07-19, "Subject: Procedures for Handling Extraordinary Awards." The letter is from

---

[1] "An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit." 38 U.S.C.A. §502 (West 2002 & Supp. 2009).

the Director of the C&P, and requires that all regional office decisions awarding a lump sum of $250,000 or more, or having a retroactive effective date of eight years or more, shall be sent to the C&P Director for "final determination." Fast Letter 07-19 states that if the C&P Service determines that the award is "improper" it will provide "specific corrective action." The Fast Letter directs that regional office decisions granting Extraordinary Awards shall not be disclosed to the veteran or his representative, that the claimant is not to be informed that the C&P review occurred, and that the claimant is not to be informed if the C&P Service reduced the original award. The C&P Service Bulletin describes this procedure as "new C&P policy."

On August 14, 2008, while this petition was pending, the VA replaced Fast Letter 07-19 with Fast Letter 08-24. Fast Letter 08-24 requires the same C&P review of the same large awards, by the same procedure as in Fast Letter 07-19, but instead of calling the decisions of the regional offices "initial rating decisions," they are called "draft rating decisions," and the C&P review is not called an "administrative review," but "pre-promulgation review." The procedure is unchanged. The letter still requires that the claimant not be informed of any C&P review, that there is no hearing before the C&P decision-maker, and the claimant is not informed of any reduction of the award decision of the regional office. At the oral argument in this court, counsel for the VA stated that the practices and procedures of Fast Letter 08-24 did not change those of Fast Letter 07-19.

The petitioners argue that this procedure is defective, for several reasons. They argue that the procedure improperly allows de novo determination of regional office final decisions. They argue that the veteran's right to a hearing is not fulfilled, and that the procedure deprives the veteran of the right to assistance in perfecting the claim, for it is

anonymously reviewed on the regional office record, with no interaction with the veteran. They stress that the veteran does not know that this re-determination is occurring, for the veteran does not know the regional office's decision. They raise issues of due process and fairness to veterans, in both promulgation and implementation.

This court is charged with review of the rulemaking process and challenges to the rules of the Department of Veterans Affairs, in accordance with the criteria of the APA. See Paralyzed Veterans of Am. v. West., 138 F.3d 1434, 1435 (Fed. Cir. 1998).

I

The VA first challenges this court's jurisdiction to receive this petition, arguing that it is moot because it was filed for Fast Letter 07-19, which was withdrawn when replaced with Fast Letter 08-24.

The general rule is that "[i]f an appealable action is canceled or rescinded by an agency, any appeal from that action becomes moot." Cooper v. Dep't of the Navy, 108 F.3d 324, 326 (Fed. Cir. 1997). However, "[v]oluntary cessation of challenged conduct moots a case . . . only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Adarand Constrs., Inc. v. Slater, 528 U.S. 216, 222 (2000) (internal citations and quotations omitted, emphasis in original); see also Parents Involved In Cmty. Schs. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 719 (2007). The action of which the petitioners complain is not the circulation of a particular "letter," but the new procedure whereby veterans' claims are decided by an entity other than the body that held the hearing and is assigned the decisional authority, without notice to the veteran and without the opportunity to participate before the decision-maker. We agree with the petitioners that the VA's procedure cannot escape review simply because the VA withdrew

2008-7076                              4

the document that initially implemented it, but continued the policy under a new number. Cf. Chaffin v. Kan. State Fair Bd., 348 F.3d 850, 865 (10th Cir. 2003) ("In such a case, we are hesitant to declare the matter moot, which would allow Defendants to evade judicial review."), abrogated on other grounds by Alexander v. Sandoval, 532 U.S. 275 (2001). Since the procedures of Fast Letter 07-19 continue unchanged, and there has been no cessation of the challenged conduct, the appeal is not mooted.

The VA alternatively argues that its new procedure is not subject to judicial review because it is not a "rule" within the meaning of the APA. The Federal Circuit is authorized to review actions of the VA Secretary "to which section 552(a)(1) or 553 of title 5" refers, see n.1 ante, and thus to "review the VA's procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." Disabled Am. Veterans v. Gober, 234 F.3d 682, 688 (Fed. Cir. 2000) (citing cases). The APA defines a "rule" as

> the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency.

5 U.S.C. §551(4).

It is apparent that the procedural change that is here challenged affects the veteran's substantive as well as procedural rights, and is "a change in existing law or policy which affects individual rights and obligations." Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 927 (Fed. Cir. 1991) (internal quotations omitted). This new procedure meets the APA definition of a "rule," and is subject to review as authorized by 38 U.S.C. §502. We conclude that this court has jurisdiction of the action brought by the petitioners.

II

Petitioners refer primarily to Regulation 38 C.F.R. §3.103, entitled "Procedural Due Process and Appellate Rights," which starts with a "statement of policy," as follows:

> §3.103 (a) Statement of policy. Every claimant has the right to written notice of the decision made on his or her claim, the right to a hearing, and the right to representation. . . . and it is the obligation of the VA to assist a claimant in developing the facts pertinent to the claim . . . . The provisions of this section apply to all claims for benefits and relief, and decision thereon, within the purview of this part 3.

Petitioners refer to the new instruction that claimants are not to be informed that their claim, after a hearing and decision by the regional office, is receiving another review at a controlling level, without any right of input or participation by the claimant. The Regulations state the veteran's "entitlement" to a hearing conducted by persons with "original determinative authority:"

> §3.103(c)(1). Upon request, a claimant is entitled to a hearing at any time on any issue involved in a claim . . . . VA will provide one or more employees who have original determinative authority of such issues to conduct the hearing and be responsible for establishment and preservation of the hearing record.

The Regulations state that the purpose of the hearing is to permit "in person" participation of the claimant, and state the VA's responsibility to assist the claimant in providing evidence that would support the claim:

> §3.103 (c)(2) The purpose of a hearing is to permit the claimant to introduce into the record, in person, any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent. . . . It is the responsibility of the employee or employees conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position.

Throughout the Regulations, the veteran's right to participate and respond is protected. For

example, if it is proposed that there be a reduction in previously granted benefits, the beneficiary "will be given 60 days for the presentation of additional evidence to show that [the] benefits should be continued at their present level." §3.105 (e), (f), (g).

The petitioners observe, and the VA does not dispute, that by the new procedure the veteran does not have a hearing in the presence of the persons who now have final decisional authority for regional office decisions. It is not disputed that there is no opportunity to provide additional evidence "which would be of advantage," §3.103(c)(2), and that the veteran is not told when the regional office makes an award that meets the criteria of this new C&P procedure. The Fast Letter instructs the regional office: "Do not offer these [large award] rating decisions to any veteran's representative for review until the C&P Service makes a final determination regarding the propriety of the decision."

The new procedure does not provide the "in person" interaction provided by §3.103(c)(2), and no opportunity to respond to the concerns of the deciding official, whose decisional authority is removed from the regional office. See Fast Letter 07-19, at 2 ("If the C&P determines the decision is improper, it will provide specific corrective action."); Fast Letter 08-24, at 3 ("C&P instructions are considered part of the pre-decisional process and are not to be included in the permanent record. . . . [R]epresentatives will be permitted the opportunity to review the draft rating decision, but only after the file is returned from C&P Service and corrections, if necessary, are made to it."). The C&P Service's determination is then issued in the name of the regional office, and the veteran has no way of knowing what persuaded an unidentified decision-maker to reduce the award that was made by the

persons before whom the hearing was held.[2]

The petitioners point out that under the present statute and regulations, the Secretary is already authorized to challenge any decision of the regional office; the difference is that the statutory standard for such challenge is "clear and unmistakable error," 38 U.S.C. §5109A(a), and is "decided in the same manner as any other claim," 38 U.S.C. §5109A(e).  In contrast, this new procedure requires no deference to the regional office that held the hearing, and no assessment of error in the decision of the regional office.  As we have noted, the VA states that there are sound policy reasons for implementing a new mechanism for large awards; however, the question before us is not whether, with appropriate statutory and regulatory authorization, the VA could realign its procedure for such claims.  Our decision is directed to the procedure that, according to the petitioners, remains in effect.

It is apparent that the procedure set forth in the Fast Letters does not comport with the governing Regulations, particularly 38 C.F.R. §3.103(c), and was not implemented in compliance with the requirements of the Administrative Procedure Act.  Applying the criteria of 5 U.S.C. §706(A), the new procedure is not in accordance with "law, rule, or regulation," and is invalid.  The procedure set forth in Fast Letter 07-19, and as continued in Fast Letter 08-24, is set aside.

## GRANTED

---

[2]    In Veterans for Common Sense v. Peake, 563 F. Supp. 2d 1049 (N.D. Cal. 2008) the court reported that as of June 2008 "C&P has reviewed approximately 800 rating decisions . . . the vast majority of those reviews resulted in a reduction of the proposed benefits."  Id. at 1076-77.

# United States Court of Appeals for the Federal Circuit

2008-7076

MILITARY ORDER OF THE PURPLE HEART OF THE
USA, and NATIONAL VETERANS LEGAL SERVICES
PROGRAM,

Petitioners,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

On petition for review pursuant to 38 U.S.C. Section 502.

SCHALL, Circuit Judge, concurring in part and dissenting in part.

I agree that the Petitioners' challenge to the validity of the extraordinary award procedure ("EAP") outlined in Fast Letters 07-19 and 08-24 is not moot. However, I part company with the majority in its holding that the EAP violates the Administrative Procedure Act ("APA"), the statute set forth at 38 U.S.C. § 5109A, and the regulation codified at 38 C.F.R. § 3.103. In my view, the Veterans Administration ("VA") did not promulgate the EAP "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), and the EAP outlined in the Fast Letters is "in accordance with law," id. § 706(2)(A). Accordingly, I concur in part and dissent in part.

I.

Under the APA, substantive, but not procedural, rule making requires prior public notice and comment. See 5 U.S.C. § 553 (2006).[1] A substantive rule is generally described as a rule that "effect[s] a change in existing law or policy or which affect[s] individual rights and obligations." Paralyzed Veterans of Am. v. West, 138 F.3d 1434, 1436 (Fed. Cir. 1998); see also Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 927 (Fed. Cir. 1991) (same); Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1045 (D.C. Cir. 1987) ("Substantive rules are ones which grant rights, impose obligations, or produce other significant effects on private interests, or which effect a change in existing law or policy." (quotation marks and citation omitted)). In contrast, a rule of agency procedure is an "internal house-keeping measure[ ] organizing agency activities," Batterton v. Marshall, 648 F.2d 694, 702 (D.C. Cir. 1980), which may be promulgated via internal agency issuances, see Schweiker v. Hansen, 450 U.S. 783, 789–90 (1981) (Social Security Claims Manual); Horner v. Jeffrey, 823 F.2d 1521, 1529–30 (Fed. Cir. 1987)

---

[1]     Section 553 states in relevant part:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. . . . Except when notice or hearing is required by statute, this subsection does not apply—
>
> > (A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice . . . .
>
> * * * *
>
> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.

5 U.S.C. § 553(b)–(c).

(Federal Personnel Manual); <u>Rank v. Nimmo</u>, 677 F.2d 692, 698 (9th Cir. 1982) (VA Circular and Handbook).

In my view, promulgation of the EAP via a Fast Letter does not violate the APA because the EAP is a rule of agency procedure, which is exempted from notice and comment requirements. The EAP outlined in the Fast Letters requires that the decision-maker, the VA Regional Office ("RO"), seek an additional pre-decisional review prior to issuing a rating decision that would award benefits retroactive eight years or more or result in a lump-sum payment of $250,000 or more. Pursuant to the EAP, the VA's Compensation and Pension ("C&P") Service reviews an extraordinary award draft decision to ensure that it comports with applicable law and is supported by evidence of record. In effect, the EAP is an internal review procedure for adjudicators to follow when processing certain claims. <u>See</u> <u>Veterans for Common Sense v. Peake</u>, 563 F. Supp. 2d 1049, 1090 (N.D. Cal. 2008) ("[T]he EAP is an internal management directive that merely establishes the procedures by which a certain class of benefits is reviewed. The EAP is essentially an auditing mechanism implemented by the VA to ensure that these types of awards are accurately adjudicated."). Nothing in the Fast Letters suggests that the EAP requires any action on the part of any party other than employees of the VA. It seems to me that institution of the EAP via the Fast Letter falls within the discretion of the VA. <u>See</u> 38 U.S.C. § 501(a) ("The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including . . . the manner and form of adjudications and awards."); <u>see also</u> <u>Batterton</u>, 648 F.2d at 707 (explaining that Congress exempted rules of agency procedure from notice and

comment requirements "to ensure that agencies retain latitude in organizing their internal operations").

In addition, the EAP does not bear the hallmarks of a substantive rule. The EAP does not "effect a change in existing law or policy" or "affect individual rights and obligations," Paralyzed Veterans, 138 F.3d at 1436, because it neither expands nor limits the basis of entitlement to VA benefits. All claims, regardless of whether they are selected for EAP review, remain subject to the same statutory and regulatory standards for entitlement to VA benefits. In other words, the EAP does not change the substantive criteria by which the VA evaluates claims. See JEM Broad. Co. v. FCC, 22 F.3d 320, 327 (D.C. Cir. 1994) (the fact that a new procedure employed the same substantive criteria as its predecessor was fatal to a claim that notice and comment was required). Because the EAP does not purport to impose, terminate, or in any way alter, any existing statutory or regulatory right, I do not view it as a substantive rule.

II.

Neither do I think that the EAP violates 38 U.S.C. § 5109A. Section 5109A(a) recites in relevant part that "[a] decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error." In other words, § 5109A authorizes the Secretary to revise a final decision on the grounds of clear and unmistakable error. See 38 U.S.C. § 5109A(d) ("A request for revision of a decision of the Secretary based on clear and unmistakable may be made at any time after that decision is made."). I do not read § 5109A to preclude de novo internal review of draft rating decisions. Fast Letter 08-24 explains that the EAP involves a "pre-promulgation review of draft rating decisions that propose extraordinary awards." After conducting its

review, C&P Service returns the draft decision to the RO (with or without instructions), and the RO subsequently issues notice of the decision to the veteran. Rating decisions do not become final until the VA provides notice to the claimant. See 38 C.F.R. § 3.104 ("A decision . . . shall be final and binding . . . at the time VA issues written notification in accordance with 38 U.S.C. § 5104."); see also Finality of Decisions, 56 Fed. Reg. 65845 (Dec. 19, 1991) ("[T]he point at which a decision becomes final and binding upon all VA field offices" is "when VA issues written notification on any issues for which it is required that VA provide notice to the claimant in accordance with 38 U.S.C. § 5104."). Because the draft rating decision is not final at the time of C&P Service review, C&P Service is not restricted to a review based upon clear and unmistakable error under § 5109A.

III.

Turning to the pertinent regulation, I do not think that the EAP violates the fundamental participation and assistance rights afforded by 38 C.F.R. § 3.103, entitled "Procedural due process and appellate rights." First, the EAP does not deprive the veteran of the right to a hearing before the decision-maker. Section 3.103(c)(1) states that the "VA will provide one or more employees who have original determinative authority of such issues to conduct the hearing and be responsible for establishment and preservation of the hearing record." The EAP does not take away the veteran's hearing before "one or more employees who have original determinative authority." The Secretary has delegated authority for benefits adjudication to the ROs via 38 C.F.R. § 3.100(a),[2] and a veteran whose file undergoes C&P Service review pursuant to the

---

[2]     The Secretary may delegate the "authority to act and to render decisions, with respect to all laws administered by the Department, to such officers and employees as the Secretary may find necessary." 38 U.S.C.

EAP still has the right to a hearing before the RO.  I also do not think that the EAP strips the RO of its decision-making authority.  While the policy guidance provided by C&P Service under the EAP apparently binds the RO, the RO still adjudicates the claim and issues the final rating decision to the claimant.  Fast Letter 08-24 confirms that, following C&P Service review, "[d]raft decisions and corresponding claims files will be returned to the [Veterans Service Center Manager] for review, correction, and promulgation."  Accordingly, the EAP does not deprive the RO of jurisdiction over the particular claim, and the veteran is still entitled to a hearing before the RO.

Second, the EAP does not contravene the purpose of a hearing described in § 3.103(c)(2).  Section 3.103(c)(2) states in relevant part:

> The purpose of a hearing is to permit the claimant to introduce into the record, in person, any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent.

Pursuant to § 3.103(c)(2), the purpose of a hearing is to provide the claimant with an opportunity to participate "in person."  The EAP does not encumber the claimant's opportunity to participate "in person."  A claimant whose file qualifies for the EAP is free to request a hearing and to submit evidence "in person" to the RO at any time while a claim is pending, including before and after C&P Service review.  I do not read § 3.103(c)(2) to entitle a claimant whose file is subject to the EAP to a hearing before

---

§ 512(a).  Pursuant to § 512(a), the Secretary has delegated authority "to the Under Secretary for Benefits and to supervisory or adjudicative personnel within the jurisdiction of the Veterans Benefits Administration designated by the Under Secretary to make findings and decisions under the applicable laws, regulations, precedents, and instructions, as to entitlement of claimants to benefits under all laws administered by the [VA] governing the payment of monetary benefits to veterans and their dependents, within the jurisdiction of Compensation and Pension Service."  38 C.F.R. § 3.100(a).

2008-7076                                6

C&P Service. That is because, in my view, while C&P Service provides the RO with internal guidance regarding extraordinary award draft decisions, the RO retains decision-making authority. Thus, I believe a hearing before the RO fulfills the purpose of the hearing described in § 3.103(c)(2).

Finally, the EAP does not hamper the RO's duty to assist a veteran described in § 3.103(c)(2). Section 3.103(c)(2) provides in pertinent part:

> It is the responsibility of the employee or employees conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position.

According to § 3.103(c)(2), the VA has the responsibility to assist the claimant in providing evidence that would support his or her claim. I believe that, when it follows the EAP, the VA satisfies its responsibility to assist the claimant. The EAP does not prevent the RO employee conducting the hearing from explaining the issues and suggesting the submission of evidence advantageous to the claimant. Fast Letter 08-24 specifically states that, "[a]s in other claims, Veterans Service Organization representatives will be permitted the opportunity to review the draft rating decision, but only after the file is returned from C&P Service and corrections, if necessary are made to it." Accordingly, a veteran's representative can review the veteran's file after C&P Service review and make suggestions to the veteran at the hearing based on that file. In my view, the duty to assist described in § 3.103(c)(2) does not require the VA to notify the claimant of C&P Service's review of a draft decision for an extraordinary award. Indeed, because C&P Service applies the same statutes and regulations as the RO, it is unclear how the mere fact that C&P Service reviewed a claimant's file "would be of advantage to the claimant's position." Withholding the fact that C&P Service

reviewed the extraordinary award draft decision, the RO employee can still "explain fully the issues and suggest the submission of additional evidence . . . which would be of advantage to the claimant's position," thereby fulfilling the duty to assist described in § 3.103(c)(2).

For the foregoing reasons, I respectfully dissent from the majority's decision to invalidate the EAP outlined in Fast Letters 07-19 and 08-24.