RICHARD WINDELS ET AL. *v.* ENVIRONMENTAL
PROTECTION COMMISSION OF THE
TOWN OF DARIEN ET AL.
(SC 17654)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.*

* The listing of justices reflects their seniority status as of the date of
oral argument.

Argued March 5—officially released October 30, 2007

*Edward V. O'Hanlan,* with whom was *Thomas J. Donlon,* for the appellants (named plaintiff et al.).

*John J. Louizos,* with whom was *John Wayne Fox* and, on the brief, *Patricia M. Gaug,* for the appellees (named defendant et al.).

*Robert F. Maslan, Jr.,* for the appellee (defendant Hart Investment Properties, LLC).

*Opinion*

PALMER, J. The primary issue in this appeal[1] is whether the trial court properly determined that the plaintiffs, Richard Windels and Cecile Windels,[2] lacked standing under the Connecticut Environmental Protection Act of 1971 (CEPA), General Statutes § 22a-14 et seq., and the Inland Wetlands and Watercourses Act (IWWA), General Statutes § 22a-36 et seq., to bring this

---

[1] The plaintiffs appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Saralyn Woods and Robert Woods also were plaintiffs in the proceedings before the trial court but did not participate in this appeal. For convenience, we refer to Richard Windels and Cecile Windels as the plaintiffs.

action against the defendants, the environmental protection commission of the town of Darien, the planning and zoning commission of the town of Darien, and Hart Investment Properties, LLC (Hart).[3] The plaintiffs commenced this action seeking, inter alia, an order enjoining Hart from developing certain properties in the town of Darien (town) and requiring the town defendants to perform an environmental review of the planned development. The trial court granted the defendants' motions to dismiss the plaintiffs' complaint on the grounds that (1) the plaintiffs lacked standing to bring their claim under General Statutes § 22a-16,[4] (2) there is no private cause of action under General Statutes § 22a-44 (b),[5] and (3) even if such a cause of action

---

[3] We refer to the environmental protection commission and the planning and zoning commission of the town of Darien collectively as the town defendants. We refer to them individually as the environmental protection commission and the planning and zoning commission. We refer to all defendants collectively as the defendants.

[4] General Statutes § 22a-16 provides: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

[5] General Statutes § 22a-44 (b) provides: "Any person who commits, takes part in, or assists in any violation of any provision of sections 22a-36 to 22a-45, inclusive, including regulations adopted by the commissioner and ordinances and regulations promulgated by municipalities or districts pursuant to the grant of authority herein contained, shall be assessed a civil penalty of not more than one thousand dollars for each offense. Each violation of said sections shall be a separate and distinct offense, and, in the case of a

existed, the plaintiffs lacked standing because they were not personally aggrieved. We conclude that the trial court incorrectly concluded that the plaintiffs lacked standing under § 22a-16 and that they had failed to prove that the defendants' activities caused unreasonable pollution. We further conclude that the trial court incorrectly determined that § 22a-44 (b) does not afford a private cause of action and that the plaintiffs were not personally aggrieved under that statutory provision. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiffs own property at 11 Queens Lane in Darien. The Goodwives River runs along and over the eastern side of their property. At the time that the plaintiffs brought this action, Hart owned property abutting the plaintiffs' property to the east and extending southward along the Goodwives River. Hart's property consists of approximately 2.81 acres subdivided into two lots of 1.44 acres (south lot) and 1.37 acres (north lot). It was subdivided in 1983 by a previous owner who had submitted a subdivision application to the planning and zoning commission

continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense. The Superior Court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or person which brought such action. All penalties collected pursuant to this section shall be used solely by the Commissioner of Environmental Protection (1) to restore the affected wetlands or watercourses to their condition prior to the violation, wherever possible, (2) to restore other degraded wetlands or watercourses, (3) to inventory or index wetlands and watercourses of the state, or (4) to implement a comprehensive training program for inland wetlands agency members."

along with a proposed plan to build a three bedroom house on each lot. After the planning and zoning commission referred the application to the town's conservation commission and inland wetlands commission, the inland wetlands commission determined that the development plan did not involve any regulated activities under its regulations, and the conservation commission recommended the imposition of several conditions "to preserve the natural state of the property," including the imposition of a twenty-five foot conservation easement along the Goodwives River.[6] Thereafter, the planning and zoning commission approved the subdivision. The property, however, was not developed at that time.

At some point after 1983 and before 1994, the north and south lots were conveyed to Joanne Hart, Hart's predecessor in interest. Also during that period, in response to certain amendments to IWWA, the town established the environmental protection commission and adopted inland wetlands and watercourses regulations. In 1995, Joanne Hart submitted an application to the planning and zoning commission for approval of modifications to the 1983 development plan for the south lot to increase the size of the house to four bedrooms and to make related changes to the septic system. The environmental protection commission reviewed the modified development plan and identified several "items of concern" but did not formally assert jurisdiction over the matter. Thereafter, the planning and zoning commission approved the modifications.[7] In 1997, the planning and zoning commission approved similar modifications to the development plan for the north lot.

---

[6] The environmental protection commission recommended a twenty-five foot conservation easement in 1983. In 1984, however, the owner of the north and south lots granted a fifty foot conservation easement to the town's conservation commission.

[7] It is not clear from the record whether the planning and zoning commission required Joanne Hart to address the environmental protection commission's "items of concern" before approving the modifications.

Pursuant to General Statutes (Rev. to 1997) § 8-8, the plaintiffs and several of their neighbors appealed to the Superior Court from the planning and zoning commission's approvals of the modifications to the north and south lots. The trial court, *Tobin, J.*, found that the planning and zoning commission had complied with applicable state statutes and town regulations, and dismissed the appeals. The plaintiffs then filed a petition for certification for review by the Appellate Court pursuant to § 8-8 (o), which was denied.

In 2002, Hart, which then owned the property, submitted to the planning and zoning commission proposed modifications to the development plan for the north lot. The modifications increased the footprint of the proposed residence and changed the building height and septic system to comply with current regulations. The planning and zoning commission and the environmental protection commission reviewed the modified development plan and determined that a formal review by the environmental protection commission was not necessary because no new or different activities within regulated areas were contemplated. The planning and zoning commission approved the modified development plan. Thereafter, the plaintiffs commenced a second administrative appeal challenging this approval. After the plaintiffs filed the appeal, Hart "relinquished" the approval and "surrendered" the building permit for the north lot. The trial court, *Tobin, J.*, concluded that the appeal was moot and, accordingly, dismissed it.

Meanwhile, Hart had begun preparatory site work on both lots and had begun construction on the south lot. In June, 2003, the plaintiffs commenced the present action. In their complaint, the plaintiffs alleged, inter alia, that the work on the lots constituted regulated activities under the town's inland wetlands and watercourses regulations. The plaintiffs sought a judgment declaring that, in accordance with § 22a-16, "Hart [could

not] perform the [s]outh [l]ot [w]ork and [n]orth [l]ot [w]ork without first obtaining a permit from [the environmental protection commission] . . . ." The plaintiffs also sought temporary and permanent injunctions pursuant to § 22a-44 (b) barring Hart from performing additional work on the north and south lots without obtaining such a permit.

On July 2, 2003, the trial court, *Tierney, J.*,[8] commenced a hearing on the plaintiffs' request for a temporary injunction. After several days of testimony, the parties agreed to merge the hearing on the application for a temporary injunction with a full trial on the merits, and the matter was continued to October 16, 2003. The trial court denied the plaintiffs' request for a temporary injunction pending final resolution of the matter.

From October, 2003, through April, 2004, the court held several hearings on the matter, and the parties conducted discovery. During that period, the plaintiffs filed two amended complaints without objection by the defendants.[9] At the conclusion of their case, the plaintiffs filed a motion for leave to file a third amended complaint to conform the pleadings to the proof at trial. The third amended complaint sought (1) a judgment declaring that, under § 22a-16 and General Statutes § 22a-18,[10] Hart's work on the north and south lots "has

---

[8] Hereinafter, all references to the trial court are to the court, *Tierney, J.*, unless otherwise noted.

[9] The amended complaints described with greater specificity than the original complaint the harm allegedly caused by Hart's failure to subject the development to review and approval by the environmental protection commission. Otherwise, the amended complaints were substantially identical to the original complaint.

[10] General Statutes § 22a-18 provides in relevant part: "(a) The court may grant temporary and permanent equitable relief, or may impose such conditions on the defendant as are required to protect the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction.

"(b) If administrative, licensing or other such proceedings are required or available to determine the legality of the defendant's conduct, the court in its discretion may remand the parties to such proceedings. In so remanding

or is likely to cause severe and irreparable harm to the Goodwives River and the surrounding watercourses," (2) an order under §§ 22a-16, 22a-18 and 22a-44 (b) enjoining Hart from performing work on the lots until the town defendants conducted an environmental review of Hart's modified development plans, and (3) attorney's fees, costs and expenses pursuant to those statutory provisions. The trial court granted the plaintiffs' request to file a third amended complaint over the defendants' objections.[11]

Thereafter, the town defendants and Hart filed separate motions to dismiss the plaintiffs' third amended

the parties the court may grant temporary equitable relief where necessary for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction and the court shall retain jurisdiction of the action pending completion of administrative action for the purpose of determining whether adequate consideration by the agency has been given to the protection of the public trust in the air, water or other natural resources of the state from unreasonable pollution, impairment or destruction and whether the agency's decision is supported by competent material and substantial evidence on the whole record.

"(c) If the agency's consideration has not been adequate, and notwithstanding that the agency's decision is supported by competent material and substantial evidence on the whole record, the court shall adjudicate the impact of the defendant's conduct on the public trust in the air, water or other natural resources of the state in accordance with sections 22a-14 to 22a-20, inclusive.

"(d) Where, as to any administrative, licensing or other proceeding, judicial review thereof is available, the court originally taking jurisdiction shall maintain jurisdiction for purposes of judicial review.

"(e) The court may award any person, partnership, corporation, association, organization or other legal entity which maintains an action under section 22a-16 or intervenes as a party in an action for judicial review under section 22a-19, and obtains declaratory or equitable relief against the defendant, its costs, including reasonable costs for witnesses, and a reasonable attorney's fee."

[11] We note that the plaintiffs sought declaratory and injunctive relief not only against Hart but also against the town defendants on the theory that the town defendants had failed to enforce the town regulations in order to ensure that Hart's development of the north and south lots would not cause, inter alia, unreasonable pollution and the destruction of wetland resources.

complaint. The town defendants and Hart asserted that the plaintiffs had failed to allege that the defendants' conduct has caused or will cause unreasonable pollution within the meaning of § 22a-16. The town defendants also maintained that the plaintiffs' claim under § 22a-44 as to them was barred by the doctrine of sovereign immunity. With respect to the plaintiff's claim under § 22a-44 against Hart, Hart maintained that the plaintiffs lacked standing to raise the claim because they were not personally aggrieved.

The trial court concluded that the plaintiffs had "failed to sustain their burden of proof of unreasonable pollution." The court concluded that the plaintiffs, instead, had raised a "permitting" claim that, under this court's decision in *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 836 A.2d 414 (2003), was not within the scope of § 22a-16. The court also concluded that § 22a-44 (b) did not confer a private right of action and that, even if such a right of action existed, the plaintiffs lacked standing to bring such an action because they were not personally aggrieved. Accordingly, the trial court granted the defendants' motions to dismiss and rendered judgment thereon for the defendants.

The plaintiffs thereafter filed the present appeal, claiming that the trial court incorrectly concluded that (1) they lacked standing under § 22a-16 and that they had failed to prove that the defendants' conduct has or will cause unreasonable pollution, (2) there is no private right of action under § 22a-44 (b), and (3) even if such a right of action existed, the plaintiffs lacked standing to bring such an action. After this appeal was filed, Hart filed a motion to dismiss the appeal, claiming that, because it had sold the south lot to a third party after the plaintiffs filed this appeal,[12] and because it formally

[12] Hart sold the south lot in August, 2005. The plaintiffs filed this appeal in July, 2005.

had abandoned its plans to develop the north lot in accordance with the modifications approved in 2002, the appeal was moot. The town defendants then filed a separate motion to dismiss the appeal on the ground that, if the claims against Hart were moot, the claims against them also should be dismissed because the plaintiffs were not entitled to any separate relief as to them. This court denied both motions without prejudice to the defendants' renewal of their claims in their briefs to this court.

We conclude, first, that the appeal is not moot. We further conclude that the trial court incorrectly determined that the plaintiffs lacked standing under § 22a-16 and that the plaintiffs had failed to prove their claim under CEPA on the merits. Finally, we conclude that the trial court also incorrectly determined that there is no private right of action under § 22a-44 (b) and that the plaintiffs lacked standing to bring an action under § 22a-44 (b).

I

We first address the defendants' claim that this appeal has become moot due to Hart's conveyance of the south lot to a third party and Hart's abandonment of its intention to develop the north lot. Although we agree with the defendants' claim insofar as it relates to the south lot, we disagree with their claim insofar as it relates to the north lot.

The following additional facts are relevant to this claim. In support of its motion to dismiss this appeal as moot, Hart submitted to this court documents demonstrating that it had completed construction of the residence on the south lot and had conveyed the property to Martin McLaughlin, who is not a party to this action. Hart also submitted an affidavit[13] stating that it

---

[13] Hart, a limited liability corporation, submitted the affidavit of Douglas Hart, a member of the corporation.

formally had surrendered the 2002 zoning permit and approval for the north lot, and had abandoned its plans to develop the north lot in accordance with that approval.

"We begin with the well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction . . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . Mootness implicates this court's subject matter jurisdiction, raising a question of law over which we exercise plenary review." (Citation omitted; internal quotation marks omitted.) *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 679–80, 899 A.2d 586 (2006).

The defendants contend that this appeal is moot as to the south lot because construction on the lot is complete and the current owner of the lot is not a party to this action. The defendants contend, therefore, that the court cannot award the injunctive relief sought, namely, an order that the town defendants and the owner of the property conduct an environmental review of the work on the property. With respect to the north lot, the defendants claim that the appeal is moot because no work on the property currently is contemplated. Finally, with respect to the plaintiffs' request for attorney's fees and costs, the defendants contend that such relief cannot be granted unless some other form of relief is available. They contend that no other relief is available because the plaintiffs did not assert a claim for damages and the claims for declaratory and injunctive relief are moot.

With respect to the south lot, the plaintiffs do not claim that they currently are entitled to any injunctive relief against Hart. They do claim, however, that the

town defendants may be required under CEPA to enforce their own inland wetlands regulations, which authorize the environmental protection commission to take action against "any person" who is violating the regulations or IWWA, not just the owner of the property on which the violations have occurred; Darien Inland Wetlands and Watercourses Regulations § 13.3 (effective December 14, 1993); and to enforce the provisions of IWWA itself.[14]

The flaw in the plaintiffs' argument is that, under the town's inland wetlands regulations, the environmental protection commission may take injunctive action only against "any person [who] is conducting or maintaining any activity, facility or condition which is in violation of [IWWA] or these regulations . . . ." Id. Hart is no longer conducting any such activities on the south lot, and a court could not order the environmental protection commission to take such action against the current owner, who is not a party to this action. See *Graham* v. *Zimmerman*, 181 Conn. 367, 373–74, 435 A.2d 996 (1980) ("This court has no jurisdiction over persons who have not been made parties to the action before it. Any judgment rendered in this action . . . would not be binding as to them."); see also *East Haven* v. *AFSCME, Council 15, Local 1662*, 212 Conn. 368, 373, 561 A.2d 1388 (1989) ("a court cannot render a judgment enforceable against a nonparty"). For similar reasons, the plaintiffs cannot obtain injunctive relief under CEPA to enforce the provisions of IWWA or under § 22a-44 (b) itself with respect to that lot. Accordingly, we conclude that there is no available injunctive relief against Hart or the town defendants with respect to the south lot. Furthermore, because the new owner of the south

---

[14] We assume, for purposes of our mootness analysis, that this relief is available under CEPA. We note, however, that permitting claims are not cognizable under § 22a-16. See *Connecticut Coalition Against Millstone* v. *Rocque,* supra, 267 Conn. 148.

lot is not a party to this action, declaratory relief relating to that property also is unavailable to the plaintiffs. Consequently, the plaintiffs' claim for declaratory relief as to the south lot also is moot.

With respect to the north lot, the defendants contend that "the cessation of a challenged activity [renders] an action to enjoin [the] enforcement [of a governing regulation] moot . . . ." (Internal quotation marks omitted.) *St. Pierre* v. *Solnit*, 233 Conn. 398, 401, 658 A.2d 977 (1995). The plaintiffs counter that "[v]oluntary cessation by a party free to resume the challenged activity . . . will not automatically shield a claim for an injunction against that very activity from review." Id., 402; see also *Adarand Constructors, Inc.* v. *Slater*, 528 U.S. 216, 222, 120 S. Ct. 722, 145 L. Ed. 2d 650 (2000) ("[v]oluntary cessation of challenged conduct moots a case . . . only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" [internal quotation marks omitted]). The plaintiffs also note that "the heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (Internal quotation marks omitted.) *Adarand Constructors, Inc.* v. *Slater*, supra, 222. The plaintiffs further contend that injunctive relief may be granted with respect to the north lot because the existence of a storm drain on that property is causing or is likely to cause unreasonable pollution of the Goodwives River.

We agree with the plaintiffs that, if Hart were to renew its efforts to develop the north lot, injunctive relief would be available under §§ 22a-16, 22a-18 or 22a-44 (b), and the fact that Hart voluntarily has ceased activities on that lot does not render the plaintiffs' claim for injunctive and declaratory relief moot as to Hart. Hart has not alleged, much less established, that it does not intend to resume any development activity on the

north lot. Although any future work may not be precisely the same as the work authorized under the 2002 modified development plan, the plaintiffs conceivably could obtain relief in this action that would apply to any future work on the north lot. For example, the plaintiffs could obtain a judgment declaring that any work on certain portions of the north lot would be likely to cause unreasonable pollution of the Goodwives River if Hart fails to comply with IWWA and the applicable town inland wetlands regulations.[15] Moreover, the plaintiffs claim that Hart has installed a storm water drainage channel on the north lot that discharges directly into the Goodwives River and is causing unreasonable pollution. The trial court could determine that the channel is a regulated activity that requires Hart to obtain an inland wetlands permit. For the same reasons, if § 22a-16 or § 22a-18 authorizes injunctive relief as to the town defendants under the circumstances of this case, such relief would be available despite Hart's voluntary cessation of its activities. Furthermore, if the plaintiffs prevail on their claims concerning the north lot, they also could receive an award of attorney's fees and costs; see General Statutes § 22a-18 (e) (court may award attorney's fees and costs to plaintiff who obtains declaratory or equitable relief against defendant); the possibility of which renders "the determination of the controversy . . . capable of resulting in practical relief to the complainant." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 625, 822 A.2d 196 (2003). Accordingly, the plaintiffs' claims are not moot as to any of the defendants insofar as those claims relate to the north lot.

## II

We next consider the plaintiffs' contention that the trial court incorrectly determined that the plaintiffs

---

[15] Thus, this case is distinguishable from the plaintiffs' appeal from the planning and zoning commission's approval of the modified development plan in 2002, which the court, *Tobin, J.*, dismissed as moot.

lacked standing to bring their action under § 22a-16. We agree that the trial court incorrectly determined that the plaintiffs lacked standing and further conclude that the court incorrectly determined that the plaintiffs had failed to meet their burden of proving that the defendants' conduct has caused or is reasonably likely to cause unreasonable pollution.

The following additional facts and procedural history are relevant to this claim. In the third amended complaint, the plaintiffs alleged that the "[c]ontinuation of the [s]outh [l]ot [w]ork and the [n]orth [l]ot [w]ork, given the proximity of each to the Goodwives River . . . has already, upon information and belief, resulted in destruction of wetlands that were never identified by Hart, and will likely cause irreparable damage to the ecosystem of the Goodwives River and the surrounding watercourses." They further alleged that "Hart's conduct including, but not limited to, ongoing site development at the [p]roperty, will cause severe and irreparable harm to the Goodwives River and the surrounding watercourses including, but not limited to, increased, unregulated [storm water] run-off, the dangers inherent in an unregulated septic system in close proximity to a watercourse, the dangers inherent in individual ledge conditions in [the] septic field, and other potential impacts as yet unknown due to [Hart's] failure to pursue appropriate review or regulation from the [environmental protection commission]."

At trial, the plaintiffs presented the expert testimony of Joseph F. Risoli, a licensed professional civil engineer, Timothy G. Welling, a soil scientist who occasionally worked with Risoli, and Michael A. Aurelia III, an environmental consultant. Risoli and Aurelia conducted an inspection of the north and south lots on January 9, 2004, which lasted approximately one and one-half

hours.[16] Risoli testified, with respect to the south lot,[17] that he had concerns that Hart may have violated various statutes and regulations by, inter alia, (1) building the primary septic system too close to downgrade exposed ledge, (2) planning reserve septic systems too close to exposed ledge and to accessory structures, (3) failing to show ledge outcroppings in the site plan, and (4) failing to comply with the requirements for "areas of special concern" as defined in § 19-13-B103d (e) (1) (D) of the Regulations of Connecticut State Agencies, which is part of the Connecticut Public Health Code.[18] Risoli testified similarly with respect to Hart's planned activities on the north lot and further testified that the reserve septic system on that lot was too close to a watercourse and wetlands area. Risoli testified that, if the lots were developed as approved by the planning and zoning commission, the septic systems would pose a "[p]otential hazard" to the environment, to the Goodwives River, to the watercourse that runs into the river and to the health of nearby residents.[19]

---

[16] The plaintiffs claim that the trial court "severely restricted" access to the property for inspection by their experts. On appeal, however, they do not challenge that action by the trial court.

[17] We refer to testimony concerning the south lot—the claims relating to which are moot; see part I of this opinion—only insofar as that testimony also pertains to the north lot.

[18] Subdivision (1) of subsection (e) of § 19-13-B103d of the Regulations of Connecticut State Agencies provides in relevant part: "Disposal system for areas of special concern shall merit particular investigation and special design, and meet the special requirements of this subsection. The following are determined to be areas of special concern . . .

"(D) Ledge rock less than five feet below ground surface . . . . ."

[19] In his supplemental affidavit submitted in support of the plaintiffs' opposition to the defendants' motions to dismiss, Aurelia stated that it was his opinion "that an environmental protection commission, and in particular its trained staff . . . would be very concerned by these site conditions" and would "at the least, require additional study of the site and these conditions to determine whether an underlying 'saddle' of ledge rock exists such that th[e] septic system is in fact not viable and presents a significant danger of failure and consequent pollution."

The plaintiffs also called Vincent D. Proto, the town's director of environmental health, as a fact witness. Proto, who was responsible for ensuring compliance with the applicable state regulations, had been involved in the review of Hart's development plans and had inspected the north and south lots on numerous occasions. Proto testified that he had examined the areas on the south lot where Risoli believed that he had found rock ledge. According to Proto, he had found loose rock with at least two feet of natural topsoil. Proto also testified that he had determined that the reserve septic system could be moved to another area, where it would be in compliance with applicable regulations and that the development plans met the requirements for "areas of special concern." Proto further testified that the septic system, as designed and approved, would work, and created no unreasonable risk of pollution. He testified similarly with respect to the development plan for the north lot.

In addition, the plaintiffs adduced testimony from David Joseph Keating, the town's assistant director of planning and zoning and zoning enforcement officer, as well as the designated agent of the environmental protection commission responsible for enforcing inland wetlands regulations. Keating testified that the 2002 modified development plan for the north lot involved several activities that technically were defined as regulated activities under the town's inland wetlands regulations and that he originally believed that Hart might be required to submit an application to the environmental protection commission for approval of the proposed modifications. After discussing the matter with the town's director of planning and zoning, the health official who had approved the revised septic plan, the chairman of the environmental protection commission and the town's legal counsel, however, Keating determined that an application would not be required. Keating also

testified that he and the others with whom he had consulted were of the opinion that it had been determined in the prior zoning appeals involving the development of the north lot that no approvals by the environmental protection commission were necessary.

In its memorandum of decision on Hart's motion to dismiss, which was incorporated by reference into the memorandum of decision on the town defendants' motion to dismiss, the trial court concluded that the plaintiffs had "failed to sustain their burden of proof of demonstrating a colorable claim of unreasonable pollution." The trial court began its analysis by stating that Proto had been "the man on the job," was not being paid as an expert witness by any of the parties and was in a position to be "neutral and fair . . . ." Accordingly, the court "rated [his credibility] highly . . . ." The trial court then noted that the state department of health, the town department of health, the environmental protection commission, the planning and zoning commission and the town building department all had been involved in the review and approval of Hart's development plans and none of these agencies had found any violations of state or local law. The court cited our statement in *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002), that "when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that [allegedly] constitutes an unreasonable impairment under CEPA, whether the conduct is unreasonable under CEPA will depend on whether it complies with that scheme."

The trial court also noted that counsel for the plaintiffs had stated several times during trial that the plaintiffs were not claiming that Hart's conduct had resulted in unreasonable pollution but that there had been procedural defects in the review and approval process for the development of the north and south lots. Thus, the court concluded, the plaintiffs had "failed to allege

anything other than a permitting claim," which is not cognizable under CEPA pursuant to this court's decision in *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 148. Accordingly, the court dismissed the plaintiffs' claims under §§ 22a-16 and 22a-18 for lack of standing.

The plaintiffs filed motions to reargue the defendants' motions to dismiss, alleging numerous factual errors in the trial court's memorandum of decision on Hart's motion to dismiss and requesting that the court adopt corrected facts. The trial court denied the plaintiffs' motions.

On appeal, the plaintiffs claim that the trial court improperly required them to prove that the defendants' conduct had resulted or was likely to result in unreasonable pollution when the plaintiffs were required only to make a colorable claim of unreasonable pollution to survive the motions to dismiss. They further claim that the trial court's factual findings were clearly erroneous.

"As a preliminary matter, we address the appropriate standard of review. If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its atten-

tion. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Cita-

tions omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485–87, 815 A.2d 1188 (2003).

General Statutes § 22a-16 provides that "any person . . . [or] corporation . . . may maintain an action . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." Because § 22a-16 affords standing to "any person," the plaintiffs "indisputably [fall] within the statute's purview. Indeed, [t]his court . . . has recognized no restriction on the class of persons with standing to seek relief under § 22a-16." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 431–32, 829 A.2d 801 (2003).

Furthermore, "[i]t is settled that the existence of statutory standing [also] depends on whether the interest sought to be protected by the [plaintiffs] is arguably within the zone of interests to be protected or regulated by the statute . . . . Under § 22a-16, standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person . . . against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state." (Citations omitted; internal quotation marks omitted.) Id., 432. Although a plaintiff seeking to assert a claim under § 22a-16 need not prove his case in order to survive a motion to dismiss, he "nevertheless must articulate a colorable claim of un-

reasonable pollution, impairment or destruction of the environment." Id.

"A complaint does not sufficiently allege standing [however] by merely reciting the provisions of § 22a-16, but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) Id., 433.

In the present case, we agree with the plaintiffs that the trial court incorrectly determined that they lacked standing to raise a claim under CEPA. The plaintiffs alleged in their third amended complaint that Hart's work on the property had resulted in the destruction of wetlands and was likely to cause irreparable damage to the ecosystem of the Goodwives River and the surrounding watercourses as a result of increased storm water run-off and the close proximity of the septic systems to the watercourses and ledge conditions. Assuming the truth of these allegations, as we must in reviewing the trial court's ruling on a motion to dismiss; see, e.g., *Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998) ("[i]n ruling [on] whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader"); we conclude that they constituted a colorable claim of harm to the natural resources of the state. The plaintiffs were not required to prove these allegations to survive a motion to dismiss.

As we have indicated, however, the trial court granted the defendants' motions to dismiss only after hearing all of the plaintiffs' evidence in a trial on the merits. It is appropriate, therefore, for this court to consider whether the trial court correctly determined that the

plaintiffs had not met their burden of proving a violation of §§ 22a-16 and 22a-18. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004) ("notwithstanding the trial court's characterization of its ruling as a dismissal for failure to establish a prima facie case, the question before us is not whether the evidence was sufficient to present the claim to a finder of fact, but whether, having presented its case to the fact finder at trial, the plaintiff sustained its burden of proof").

The standard of our review of the trial court's factual findings is well established. "[T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 151, 732 A.2d 133 (1999). "The trial court's findings are binding [on] this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

In the present case, the trial court concluded that the plaintiffs had failed to prove unreasonable pollution because none of the agencies that had reviewed Hart's development plans had found any violations of state or local law. In support of its determination, the trial court relied on this court's holding in *Waterbury* v. *Washington*, supra, 260 Conn. 557, that conduct does not constitute an unreasonable impairment of the environment for purposes of CEPA if that conduct is specifically governed by and complies with an existing environmen-

tal legislative and regulatory scheme. We conclude that, with respect to Hart's compliance with the Connecticut Public Health Code, this determination was not clearly erroneous. It was within the province of the court to find that Proto, who had extensive involvement in the project and had inspected the property on numerous occasions, was a more knowledgeable and credible witness than the plaintiffs' experts. Thus, faced with conflicting testimony about the existence, extent and effect of ledge conditions on the property, it was within the province of the court to credit Proto's testimony that there was sufficient natural topsoil to meet the applicable health regulations instead of Risoli's testimony to the contrary. Similarly, the court was not required to credit Risoli's testimony that the septic systems posed a potential hazard to the environment instead of Proto's testimony that they would work and posed no unreasonable risk of pollution.[20]

The trial court's implicit determination that the plaintiffs had failed to prove that Hart's work on the property violated CEPA because it was in compliance with the substantive provisions of IWWA, however, requires additional analysis. As we have indicated, the record reveals that the environmental protection commission never asserted jurisdiction over Hart's development plans. Keating testified that the environmental protec-

---

[20] The plaintiffs claim that the trial court's conclusion that Proto was more credible than their expert witnesses is not supported by the evidence. Specifically, they claim that Proto was not credible because he was an agent of the town and was represented in several matters by counsel for the town defendants, had failed to enforce the very regulations that allegedly were violated, and had less expertise and training than their expert witnesses. In the absence of extraordinary circumstances not present in this case, however, "the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of [fact], who is privileged to adopt whatever testimony he reasonably believes to be credible," and this court will not "pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, supra, 249 Conn. 151. We therefore reject this claim.

tion commission had determined that it had no jurisdiction over the 2002 modified development plan for the north lot because it believed that the trial court in the previous zoning appeals had determined that Hart was not *required* to comply with the town inland wetlands regulations, not that it had complied with them. Thus, the record does not support a finding that the work on the property necessarily was in compliance with the town inland wetlands regulations.

We conclude in part III of this opinion that, contrary to the trial court's decision, § 22a-44 (b) confers a private right of action, that the plaintiffs have standing to bring a claim under § 22a-44 (b) and that Hart's failure to obtain a permit for a regulated activity could form the basis for such an action. Accordingly, on remand, the court must determine whether, contrary to the town defendants' determination, Hart was required to apply for such a permit under the applicable inland wetlands regulations. If the court concludes that a permit was required, the environmental protection commission will be required to consider whether Hart's plans for the north lot comply with the town inland wetlands regulations. Under *Waterbury* v. *Washington*, supra, 260 Conn. 557, a determination that the work was required to be, but was not, in compliance with the substantive provisions of the applicable inland wetlands regulations could support a finding that it constituted unreasonable pollution under CEPA. Accordingly, we conclude that, because the trial court's determination that the plaintiffs failed to prove unreasonable pollution under CEPA was founded on a flawed premise, that determination cannot stand.

III

The plaintiffs' final claim is that the trial court incorrectly concluded that there is no private right of action under § 22a-44 (b) and that, even if such a right of action

exists, they lacked standing because they were not personally aggrieved. The plaintiffs contend that the express language of the statute authorizes "any person" to bring an action. They further contend that, unlike CEPA, IWWA allows claims alleging violations of the regulatory process. We agree with both claims.

## A

We first consider whether § 22a-44 (b) confers a private right of action. This issue presents a question of statutory interpretation over which our review is plenary. E.g., *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 404, 891 A.2d 959 (2006). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[21] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general

[21] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

subject matter . . . ." (Internal quotation marks omitted.) Id., 405.

We begin our analysis, therefore, with the relevant language of IWWA. General Statutes § 22a-44 (b) provides in relevant part that "[t]he Superior Court, in an action brought by the commissioner [of environmental protection], municipality, district[22] or *any person*, shall have jurisdiction to restrain a continuing violation of . . . sections [22a-36 through 22a-45], to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or *person* which brought such action. . . ." (Emphasis added.) General Statutes § 22a-38 (2) defines " '[p]erson,' " as that term is used in § 22a-44, to mean "any person, firm, partnership, association, corporation, limited liability company, company, organization or legal entity of any kind, including municipal corporations, governmental agencies or subdivisions thereof . . . ."

In support of its conclusion that § 22a-44 (b) does not expressly authorize a private right of action, the trial court observed that, unlike § 22a-16, § 22a-44 (b) does not explicitly provide that "[a]ny person . . . may maintain an action in the superior court." (Internal quotation marks omitted.) The court also concluded that § 22a-44 (b) did not create an implied right of action under the test set forth in *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249,

---

[22] General Statutes § 22a-42 (e) provides in relevant part: "Any municipality, pursuant to ordinance, may act through the board or commission authorized in subsection (c) of this section to join with any other municipalities in the formation of a district for the regulation of activities affecting the wetlands and watercourses within such district. . . ."

680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997), overruled on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 289, 914 A.2d 996 (2007). In *Napoletano*, we stated that, "[i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 249. The trial court concluded that, although the plaintiffs were in the class of persons for whose benefit the statute was enacted, that is, the citizens of this state, there was no indication that the legislature intended to create a private remedy for all citizens. The court further concluded that, in enacting IWWA, the legislature had expressed a desire that its provisions, which authorize criminal fines and incarceration as well as civil penalties,[23] be enforced primarily by the commissioner of environmental protection, and that a private right of action would be inconsistent with this legislative intent. In support of this conclusion, the trial court cited our dictum in *Napoletano* that, when "the legislature wishes to limit enforcement of a statute to an administrative body, it has expressly done so. See, e.g., Connecticut Environmental Protection Act (General Statutes §§ 22a-

---

[23] General Statutes § 22a-44 (c) provides in relevant part: "Any person who wilfully or knowingly violates any provisions of sections 22a-36 to 22a-45, inclusive, shall be fined not more than one thousand dollars for each day during which such violation continues or be imprisoned not more than six months or both. . . ."

5, 22a-6a and 22a-6b[24] expressly vests enforcement power in commissioner) . . . ." *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 251. Finally, the court noted that no other Connecticut court has recognized a private cause of action under § 22a-44 (b).

We agree with the plaintiffs that the trial court's interpretation of § 22a-44 (b) is inconsistent with the language of the statute, which expressly recognizes that an action may be brought by "[a]ny person . . . ." Limiting IWWA enforcement actions to the commissioner of environmental protection, municipalities and districts would require us to read the phrase "any person" out of the statute, contrary to the well established principle that "[s]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 608, 893 A.2d 431 (2006). Indeed, although we agree with the trial court that the language of § 22a-44 (b) is not as unequivocal as the language of § 22a-16 in granting "any person" a private right of action, the trial court did not explain, and we cannot conceive, why § 22a-44 (b) refers to an action brought by "[a]ny person" if not to acknowledge the right to bring such an action. Moreover, if no such right of action existed, there would be no recourse for persons, like the plaintiffs in the present case, who claim that a town inland wetlands commission has violated IWWA by declining to assert jurisdiction over a regulated activity. Such a result would be difficult to reconcile with the broad remedial policy underlying IWWA as set forth

---

[24] General Statutes § 22a-5 describes the duties and powers of the commissioner of environmental protection. General Statutes § 22a-6a provides that persons who violate IWWA, among other statutes, are liable to the state for costs incurred in investigating, controlling and abating such violations and for restoration costs. General Statutes § 22a-6b provides for the imposition of civil penalties for such violations by the commissioner of environmental protection.

in General Statutes § 22a-36,[25] especially in light of the express reference to an action brought by "[a]ny person" in § 22a-44 (b). See, e.g., *McManus* v. *Commissioner of Environmental Protection*, 229 Conn. 654, 663, 642 A.2d 1199 (1994) ("environmental statutes are remedial in nature and should be construed liberally to accomplish their purposes").

The defendants claim, however, that the reference to "[a]ny person" in § 22a-44 (b) "authorizes courts to use the powers granted therein to restrain wetlands violations in actions brought under other statutes, such as § 22a-16 and [General Statutes] § 22a-19 (allowing 'any person' to intervene in an administrative proceeding) or [General Statutes] § 22a-43[26] (providing for

[25] General Statutes § 22a-36 provides in relevant part: "It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and watercourses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn."

[26] General Statutes § 22a-43 provides in relevant part: "(a) The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, a district or municipality or any person owning or occupying land which abuts any portion of land within, or is within a radius of ninety feet of, the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may, within the time specified in subsection (b) of section 8-8, from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. Such appeal shall be made returnable

administrative appeals of wetlands decisions by 'any person aggrieved'), but provides for no separate cause of action by 'any person' apart from these statutes." This interpretation finds no support in the language or structure of the relevant statutes. First, if the legislature had intended the word "action," as used in § 22a-44 (b), to mean an action *pursuant to § 22a-16, § 22a-19 or § 22a-43*, it easily could have said so expressly. Second, § 22a-44 (b) provides for specific remedies, such as a damages award consisting of "[a]ll costs, fees and expenses in connection with such action . . . together with reasonable attorney's fees" and the imposition of civil penalties that are not available under CEPA or § 22a-43. In addition, General Statutes § 22a-44 (a) provides that "[t]he issuance of an order pursuant to this section shall not delay or bar *an action pursuant to subsection (b)* of this section." (Emphasis added.) These provisions are strong evidence that the legislature intended to create an independent action pursuant to § 22a-44 (b). Moreover, the defendants do not dispute that the commissioner of environmental protection, municipalities and districts may bring an action pursuant to § 22a-44 (b), and the statute does not distinguish between these entities and any other person.

The defendants also maintain that recognizing a private cause of action under § 22a-44 (b) would render the appeal provisions of § 22a-43 superfluous. We disagree. General Statutes § 22a-43 (a) authorizes an appeal by any person who has been "aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner [of environmental protection], a district or municipality or any person owning or occupying land which abuts any portion of land within, or is within a radius of ninety

---

to the court in the same manner as that prescribed for civil actions brought to the court, except that the record shall be transmitted to the court within the time specified in subsection (i) of section 8-8. . . ."

feet of, the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections . . . ." We agree with the defendants that, when "a statutory right of appeal from an administrative decision exists, an aggrieved party may not bypass the statutory procedure and instead bring an independent action to test the very issue which the appeal was designed to test." (Internal quotation marks omitted.) *LaCroix* v. *Board of Education*, 199 Conn. 70, 78, 505 A.2d 1233 (1986). When, as in the present case, the commissioner of environmental protection or a district or municipality has not formally asserted jurisdiction under IWWA, however, it can render no appealable order, decision or action, and, therefore, the provisions of § 22a-43 are not applicable.[27] We must conclude, therefore, that the private right of action recognized in § 22a-44 (b) is not duplicative of the appeal provisions of § 22a-43.

B

Having concluded that there is a private right of action under § 22a-44 (b), we next address the plaintiffs' claim that the trial court incorrectly determined that the plaintiffs did not have standing to raise such a claim because they were not personally aggrieved. We agree with the plaintiffs.

The following additional procedural history is relevant to this claim. In its memorandum of decision, the trial court concluded that the statutory standing provi-

---

[27] We note that General Statutes § 22a-43 requires that an appeal be brought "within the time specified in subsection (b) of section 8-8, from the publication of such regulation, order, decision or action . . . ." In the present case, Keating testified that his decision that Hart was not required to submit its 2002 modified development plan to the environmental protection commission to ensure compliance with IWWA never had been published. We recognize, however, that, in cases in which the governmental body formally has asserted jurisdiction over an IWWA matter and subsequently issues a formal ruling that it lacks jurisdiction, § 22a-43 could apply.

sion of CEPA, which does not require plaintiffs to establish a specific injury to a personal interest, did not apply to § 22a-44 (b). The court also stated that the "rule against a permitting claim [under CEPA] must be read into . . . § 22a-44 (b)." Because the court had determined that the plaintiffs had alleged a permitting claim, it concluded that the plaintiffs were not classically aggrieved for purposes of bringing a claim under § 22a-44 (b).[28] The court also rejected the plaintiffs' claim that they were statutorily aggrieved as abutting landowners under § 22a-43 because the plaintiffs had not brought an appeal pursuant to the provisions of that statute. The court concluded that "the legislature enacted § 22a-43 granting statutory aggrievement to abutting landowners but limited that statute to appeals, not to separate independent lawsuits commenced by those abutting landowners. If the legislature intended to grant adjacent landowners statutory aggrievement [under] § 22a-44 (b), they know how to do so." Accordingly, the trial court concluded that, even if § 22a-44 (b) conferred a private right of action, the plaintiffs lacked standing to bring an action under that statute.

We first consider whether the trial court correctly concluded that "permitting claims," that is, claims alleging a violation of the procedural provisions of IWWA, are not permissible under § 22a-44 (b). We agree with the plaintiffs that that statute contains no such limitation. General Statutes § 22a-44 (b) specifically authorizes actions against "[a]ny person who commits, takes part in, or assists in any violation of *any provision* of sections 22a-36 to 22a-45 . . . including regulations adopted by the commissioner [of environmental protection] and ordinances and regulations promulgated by municipalities or districts pursuant to the grant of authority herein contained . . . ." (Emphasis added.)

---

[28] The legal principles governing classical and statutory aggrievement are set forth in part II of this opinion.

Thus, under the plain language of the statute, a defendant's failure to obtain a permit to conduct a regulated activity[29] under General Statutes § 22a-42a (c) (1)[30] can form the basis for a claim under § 22a-44 (b). The allegation and proof of a violation of the substantive standards of the relevant statutes and regulations are not required.

We next consider who has standing to raise such claims. The plaintiffs do not dispute that the trial court correctly determined that § 22a-44 (b) does not confer standing on all persons to raise claims that the procedural provisions of IWWA have been violated, regardless of whether the plaintiff has alleged that the violation has resulted in specific harm to a protected *personal* interest. Cf. General Statutes § 22a-16 ("any person . . . may maintain an action . . . for the protection of the *public* trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction" [emphasis added]). The plaintiffs do maintain, however, that, contrary to the trial court's conclusion, they are personally aggrieved by the alleged failure of the town defendants to assert jurisdiction over Hart's activities as required under IWWA because those activities create a threat of pollution to the Goodwives River, which runs over a portion of their property. Therefore, the plaintiffs argue, they have a specific, personal and legal interest that will be specially and injuriously affected if Hart is not required to comply with applicable IWWA statutes and regulations.

---

[29] General Statutes § 22a-38 (13) defines " '[r]egulated activity' " as "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40 . . . ."

[30] General Statutes § 22a-42a (c) (1) provides in relevant part: "On and after the effective date of the municipal regulations promulgated pursuant to subsection (b) of this section, no regulated activity shall be conducted upon any inland wetland or watercourse without a permit. . . ."

We have concluded that § 22a-44 (b) confers a private cause of action and allows a claim that a defendant has failed to obtain the required permit for a regulated activity[31] pursuant to § 22a-42a (c) (1). We are compelled to conclude, therefore, that the plaintiffs' interest in ensuring that Hart has obtained a permit for any regulated activities on the north lot that might affect the watercourse located partially on their property is within the scope of the interests that the private right of action under § 22a-44 (b) was intended to protect.[32] Indeed, if the plaintiffs did not have standing to bring a claim pursuant to § 22a-44 (b) under these circumstances, it is difficult to imagine when they would have such standing. We conclude, therefore, that the plaintiffs are personally aggrieved by Hart's alleged failure to obtain a permit for a regulated activity, as § 22a-42a (c) (1) requires.[33]

The town defendants claim that, even if the plaintiffs have standing to bring a claim under § 22a-44 (b), their claim is barred by principles of governmental immunity. In addition, the defendants claim, more or less in passing, that Hart's activities on the north and south lots complied with the approvals that it received in 1997 and 2002, and, in view of the fact that those approvals were the subject of an unsuccessful appeal by the plaintiffs, their IWWA claim is barred by principles of res judicata. Because the trial court concluded that the

[31] An activity that pollutes a wetland or watercourse is a regulated activity as defined by General Statutes § 22a-38 (13). See footnote 29 of this opinion.

[32] We express no opinion on the issue of whether Hart's activities constitute a regulated activity under IWWA or, if so, whether it was required to obtain a permit pursuant to § 22a-42a (c) (1). We conclude only that the plaintiffs have adequately alleged potential harm to an interest that § 22a-44 (b) was intended to protect.

[33] Because we conclude that the plaintiffs' allegation that Hart's activities directly affect their property is sufficient to confer standing, we need not consider whether the plaintiffs' status as an abutting landowner would be sufficient to confer standing under § 22a-44 (b).

plaintiffs lacked standing to bring their claim, it did not reach these issues. Furthermore, although the defendants raised these claims as alternate grounds for affirmance, they did not file a preliminary statement of issues indicating their intent to do so, as Practice Book § 63-4 (a) (1) requires. Thus, the plaintiffs were not on notice to address these issues in their brief to this court and, in their reply brief, had only an extremely limited opportunity to do so because of their need to address the many complex issues and claims that the town defendants raised in their brief. Moreover, both alternate grounds for affirmance raise difficult issues that the town defendants did not discuss extensively in their brief.[34] Finally, addressing the issues would not obviate the need to remand the case to the trial court because, even if we were to conclude that the town defendants are entitled to governmental immunity, the plaintiffs still could pursue their claims against Hart. Under these circumstances, we decline to address these claims, which the trial court shall consider on remand. See *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 563 n.7, 898 A.2d 178 (2006); *Liscio* v. *Liscio*, 204 Conn. 502, 507, 528 A.2d 1143 (1987).

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[34] With respect to the claim of res judicata, the town defendants did not brief the issue, and the record is clearly inadequate for review. With respect to the claim of governmental immunity, the portion of the brief dedicated to the issue is approximately one and one-half pages long, and the arguments presented are essentially generic.